UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MACJHAY YAGAO,<br><br>                    Petitioner,<br><br>v.<br><br>JOHN WEAVER, Warden,<br><br>                    Respondent. | Case No.: 15-cv-2554 WQH (JLB)<br><br>**REPORT AND RECOMMENDATION FOR ORDER:**<br><br>**(1) DENYING MOTION FOR STAY AND ABEYANCE [ECF No. 34]; and**<br><br>**(2) DENYING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS [ECF No. 6]** |

This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California.

## I. INTRODUCTION

Before the Court is the first amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 of Macjhay Yagao. (ECF No. 6.) Petitioner challenges his March 25, 2014 San Diego County Superior Court conviction for the transportation of more than 28.5 grams of marijuana in violation of California Health and Safety Code § 11360(a). (*Id.*)

Also before the Court is Petitioner's motion for a stay and abeyance. (ECF No. 34.) Petitioner requests that this Court stay and hold in abeyance his federal habeas corpus petition pending the exhaustion of his state court remedies. (*Id.*)

## II. PROCEDURAL HISTORY

Petitioner is a citizen of the Philippines.  (ECF No. 6 at 14, 35.)  He has been a Legal Permanent Resident of the United States since 1995.  (*Id.*)

On February 10, 2014, the San Diego County District Attorney filed a complaint in the San Diego County Superior Court charging Petitioner with one count of transportation of more than 28.5 grams of marijuana in violation of California Health and Safety Code § 11360(a) (count one), one count of possession of marijuana for sale in violation of California Health and Safety Code § 11359 (count two), and one count of driving with suspended driving privileges in violation of California Vehicle Code § 14601(a) (count three).  (ECF No. 20-5 at 38–40.)[1]

On March 25, 2014, Petitioner, represented by attorney Jill Kovaly, pleaded guilty by way of a written plea agreement to count one.  (ECF No. 6 at 94–96.)  The prosecution, in exchange, agreed to dismiss counts two and three, to not oppose local time, and to allow defendant alternatives to custody, if available.  (*Id.* at 94.)

Petitioner was scheduled for sentencing on May 5, 2014 (*see id.* at 78); however, his sentencing hearing was continued to June 2, 2014, when he stated that he wished to file a motion to withdraw his guilty plea (*see id.* at 80–84).  The record reflects that Petitioner did not file a motion to withdraw his plea by the court-imposed deadline of June 2, 2014.  (*See id.* at 86–91.)  The court sentenced Petitioner in accordance with his plea agreement to 180 days in work furlough and three years of formal probation.  (*Id.* at 89–91.)  As a result of his conviction, on October 3, 2014, Petitioner was placed in immigration removal proceedings.  (*Id.* at 33–35.)  At the time Petitioner filed his federal habeas petition, he was in the custody of Immigration and Customs Enforcement ("ICE").  (*Id.* at 14.)

On January 6, 2015, Petitioner filed a petition for a writ of habeas corpus in the San Diego County Superior Court in Case No. HC21871.  (ECF No. 20-2.)  In the petition,

---

[1]  Page numbers for docketed materials cited in this Report and Recommendation refer to those imprinted by the court's electronic filing system.

Petitioner contended that attorney Jill Kovaly provided ineffective assistance during pretrial proceedings, during plea negotiations, and at the plea and sentencing hearings, resulting in the violation of Petitioner's federal constitutional rights guaranteed by the Fifth, Sixth, Eighth, and Fourteenth Amendments. (*Id.* at 2–3.) Specifically, Petitioner contended that his trial counsel: (1) failed to investigate the immigration consequences of his guilty plea; (2) failed to advise him of the adverse immigration consequences of his guilty plea; (3) failed to negotiate a plea agreement that would not trigger immigration removal proceedings; and (4) coerced him into entering a guilty plea. (*Id.* at 6–9.) In addition, Petitioner contended that his constitutional rights were violated because his guilty plea was not entered knowingly, intelligently, freely, or voluntarily. (*Id.* at 3–4.) On May 21, 2015, the San Diego County Superior Court denied the petition on the merits. (ECF No. 20-4.)

Petitioner filed a subsequent petition for writ of habeas corpus in the California Court of Appeal on August 25, 2015, in Case No. D068709. (ECF No. 20-5.) Petitioner raised the same claims in this petition as he did in his petition before the San Diego County Superior Court. (*Id.* at 8–15.) In addition, he asserted that he received ineffective assistance of counsel because his trial counsel failed to investigate all of the possible defenses to his guilty plea. (*Id.* at 15–17, 21.) Furthermore, Petitioner contended his constitutional rights were violated because the trial court failed to conduct an on-the-record colloquy with Petitioner in order to validate his written waiver of his right to a jury trial. (*Id.* at 20.) On August 27, 2015, the California Court of Appeal denied the petition in a reasoned decision on the grounds that Petitioner's claims were both procedurally barred and meritless. (ECF No. 20-6.)

Petitioner then filed a petition for writ of habeas corpus in the California Supreme Court on September 8, 2015, in Case No. S229109. (ECF No. 20-7.) Petitioner raised the same claims in this petition as he did in the petition before the California Court of Appeal. (ECF No. 20-7 at 13–27.) The California Supreme Court denied the petition without comment on October 14, 2015. (ECF No. 20-8.)

On November 12, 2015, Petitioner submitted a petition for writ of habeas corpus to this Court. (ECF No. 1.) Petitioner subsequently filed a first amended petition for writ of habeas corpus on December 17, 2015. (ECF No. 6.) On March 29, 2016, Petitioner filed a document entitled, "Supplemental Brief in Support of Habeas Corpus." (ECF No. 16.) The Court notes that this filing is not properly before the Court, as Petitioner had already amended his pleading once as a matter of course and Federal Rule of Civil Procedure 15 requires parties to seek leave of Court prior to amending their pleadings further. *See* Fed. R. Civ. P. 15(a)(2); *see also* 28 U.S.C. § 2242 (providing that habeas petitions "may be amended or supplemented as provided in the rules of procedure applicable to civil actions"); *Calderon v. U.S. Dist. Court (Taylor)*, 134 F.3d 981, 986 n.6 (9th Cir. 1998) ("Rule 15(a) applies to habeas corpus actions with the same force that it applies to garden-variety civil cases."). However, because Petitioner is proceeding *pro se* and because the Court "must remain guided by 'the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings and technicalities,'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987)), the Court considers Petitioner's Supplemental Brief in Support of Habeas Corpus (ECF No. 16) as part and parcel of the First Amended Petition.

Respondent filed an answer to the Petition on May 2, 2016. (ECF No. 19.) Petitioner was given until July 30, 2016 to file a traverse (ECF No. 33); however, Petitioner did not file one. Instead, Petitioner filed a document entitled "Amended Supplemental Brief & Prayer for Relief" on June 13, 2016. (ECF No. 29.) As this filing was made within the time limitation provided for Petitioner to file a traverse, the Court treats it as such.

## III. SCOPE OF REVIEW

Section 2254 of Title 28 of the United States Code provides the scope of review for federal habeas corpus claims:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in [sic] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

28 U.S.C. § 2254(a). In addition, federal habeas corpus claims are subject to the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254(d). *See Lindh v. Murphy*, 521 U.S. 320, 326–27 (1997) (holding that federal courts reviewing any habeas petition filed in federal court after the April 24, 1996 enactment of AEDPA will apply its provisions). Under AEDPA, a petitioner must overcome a high threshold to obtain relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 100 (2011).

For purposes of federal habeas corpus review under § 2254(d)(1), "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003). The term refers to the holdings, as opposed to the dicta, of Supreme Court decisions. *Id.* at 71 (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

A federal habeas court may grant relief under the "contrary to" clause of § 2254(d)(1) if the state court applied a rule different from the governing law set forth in Supreme Court cases or if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause of § 2254(d)(1) if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id.* Habeas corpus

5

relief cannot be granted under § 2254(d)(1) "so long as 'fairminded jurists could disagree'" on whether the state court decision is inconsistent with clearly established federal law. *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

To grant relief under § 2254(d)(2)'s "unreasonable determination of the facts" standard, a petitioner must demonstrate that the factual findings upon which the state court's adjudication of his claims rest, assuming it rests upon a determination of the facts, are objectively reasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

Where there is no reasoned decision from the state's highest court, the federal habeas court "looks through" to the underlying appellate court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 804–06 (1991); *see also Harrington*, 562 U.S. at 99–100 (holding that an unexplained denial of a claim by the California Supreme Court is an adjudication on the merits of the claim and is entitled to deference unless "there is reason to think some other explanation for the state court's decision is more likely").

## IV. DISCUSSION

### A. Motion for Stay and Abeyance

Petitioner presents a mixed federal habeas petition that contains the following two unexhausted claims: (1) Petitioner received ineffective assistance of counsel when his trial counsel failed to file a motion to suppress certain evidence found by the arresting officers (ECF No. 6 at 26–27); and (2) the trial court failed to conduct a detailed inquiry into whether Petitioner's guilty plea was the product of coercion (*id.* at 9, 25). Petitioner has filed a motion for a stay and abeyance of his federal habeas corpus petition so that he may return to the state courts to exhaust his state judicial remedies. (ECF No. 34.) Petitioner argues that a recently enacted California statute, California Penal Code § 1473.7,[2] and the

_____

[2] Section 1473.7 of the California Penal Code became effective on January 1, 2017. *See* Cal. Penal Code § 1473.7 (West 2017). It states in relevant part: **"**A person no longer imprisoned or restrained may prosecute a motion to vacate a conviction or sentence for either of the following reasons: (1) The conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to

6

recent passage of California Proposition 64[3] "provide[] the Petitioner the opportunity to seek relief from the State Courts." (*Id.* at 1–2.) Petitioner believes that "due to his opportunities under 1473.7 and the passage of prop. 64, his state remedies have not been exhausted." (*Id.* at 3.)

Generally, a habeas petition brought under 28 U.S.C. § 2254 may "not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1). This exhaustion requirement exists as a matter of federal-state comity and assures the state courts of the "initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (quoting *Wilwording v. Swenson*, 404 U.S. 249, 250 (1971)). To exhaust state judicial remedies, a federal habeas petitioner must present the highest state court available with a fair opportunity to rule on the merits of every issue raised in his federal habeas petition. *See* 28 U.S.C. § 2254(b), (c); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Thus, in California, petitioners are required to exhaust their habeas claims in a petition to the California Supreme Court. *See Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999) (applying *O'Sullivan* to California).

Over thirty years ago, the United States Supreme Court interpreted the exhaustion requirement to require district courts to dismiss federal habeas petitions that contained even one unexhausted claim. *Rose v. Lundy*, 455 U.S. 509, 510 (1982). However, *Lundy* was decided at a time when there was no statute of limitations on filing federal habeas petitions,

---

meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." Cal. Penal Code § 1473.7(a).

[3] Proposition 64, known alternatively as "the Adult Use of Marijuana Act," was a California voter initiative to amend, repeal, and add sections to the California Business and Professions Code, Food and Agriculture Code, Health and Safety Code, Labor Code, Revenue and Taxation Code, and Water Code with the purpose of establishing a comprehensive system to legalize, control, and regulate the cultivation, processing, manufacture, distribution, testing, and sale of nonmedical marijuana for use by adults 21 years and older. The proposition was approved at the November 8, 2016 statewide general election, and the sale and taxation of recreational marijuana will go into effect on January 1, 2018. *See, e.g.*, A.B. 64, 2017 Assemb., Reg. Sess. (Cal. 2017).

and petitioners could return to federal court after exhausting their unexhausted claims to "present their perfected petitions with relative ease." *Mena v. Long*, 813 F.3d 907, 909 (9th Cir. 2016) (quoting *Doe v. Jones*, 762 F.3d 1174, 1177 (10th Cir. 2014)). After the AEDPA established a one-year statute of limitations for federal habeas petitions, petitioners who brought unexhausted claims to federal court faced the possibility that they would have insufficient time to exhaust those claims in state court and then return to federal court. *Id.* The Supreme Court confronted this issue in *Rhines v. Weber*, where it held that under certain circumstances, district courts may stay mixed federal habeas petitions—those containing both exhausted and unexhausted claims—to allow petitioners to present their unexhausted claims to the state courts without losing their place in federal court. *Id.* (citing *Rhines*, 544 U.S. at 275–77).

Here, Petitioner requests that this Court stay his federal habeas petition so that he may return to the California state courts to resolve the issue that he "would not have plead [sic] guilty again to H&S § 11360(a) if he was advised otherwise and correctly" about the immigration consequences of his guilty plea. (ECF No. 34 at 1–2.) However, this is not one of Petitioner's unexhausted claims. On the contrary, Petitioner presented the California Supreme Court with a fair opportunity to rule on the merits of this claim when he included it in the habeas petition that he filed with that Court in September 2015. (*See* ECF No. 20-7 at 18–22, 26–27.) Thus, this claim is fully exhausted.

As discussed above, the purpose of the stay and abeyance procedure is to provide petitioners the chance to exhaust any unexhausted claims contained in their federal habeas petitions without losing the opportunity for subsequent federal review of the claims. *See Mena*, 813 F.3d at 909–10. The stay and abeyance procedure does not provide federal habeas petitioners the opportunity to relitigate exhausted claims in state court. Nor does California Penal Code § 1473.7 or California Proposition 64 create an opportunity for a federal habeas petitioner to return to state court to relitigate exhausted claims. Thus, because Petitioner exhausted his state judicial remedies with respect to his claim that he would not have pleaded guilty if he had been advised differently about the consequences

8

of his plea, this claim provides no basis to stay and hold in abeyance Petitioner's federal habeas petition.

In addition, the Court, upon its own review of Petitioner's federal habeas petition, concludes that there are no other circumstances that would warrant a stay of Petitioner's federal habeas petition. The Supreme Court held in *Rhines* that a stay and abeyance of a mixed habeas petition "should be available only in limited circumstances," where a petitioner demonstrates good cause for his failure to exhaust his unexhausted claims in state court, where the petitioner's unexhausted claims are not plainly meritless, and where the petitioner has not engaged in abusive litigation tactics. *Rhines*, 544 U.S. at 277–78. Again, Petitioner presents the following two unexhausted claims in his federal habeas petition: (1) Petitioner received ineffective assistance of counsel when his trial counsel failed to file a motion to suppress certain evidence found by the arresting officers (ECF No. 6 at 26–27); and (2) the trial court failed to conduct a detailed inquiry into whether Petitioner's guilty plea was the product of coercion (*id.* at 9, 25). However, as addressed more fully below, Petitioner fails to demonstrate that the limited circumstances under which a stay and abeyance of a mixed federal habeas petition would be appropriate are present in this case.

### 1. Good Cause

The good cause element is the equitable factor of the *Rhines* test, and it ensures that a stay and abeyance is available only to those petitioners who have a legitimate reason for failing to exhaust a habeas claim in state court. *Blake v. Baker*, 745 F.3d 977, 982 (9th Cir. 2014). "The caselaw concerning what constitutes 'good cause' under *Rhines* has not been developed in great detail." *Dixon v. Baker*, 847 F.3d 714, 720 (9th Cir. 2017) (citing *Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014) ("There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust.")). The Supreme Court has addressed the issue only once, when it noted that a "petitioner's reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for him to file in federal court." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005)). The Ninth

Circuit has held that the *Rhines* good cause standard does not require a showing of "extraordinary circumstances," but a petitioner must do more than simply assert that he was "under the impression" that his claim was exhausted. *Id.* (citing *Jackson v. Roe*, 425 F.3d 654, 661–62 (9th Cir. 2005); *Wooten v. Kirkland*, 540 F.3d 1019, 1024 (9th Cir. 2008)). A bald assertion cannot amount to a showing of good cause, but a reasonable excuse, supported by evidence to justify a petitioner's failure to exhaust, will. *Blake*, 745 F.3d at 982.

Petitioner argues that he has not fully exhausted his state judicial remedies "due to his opportunities under 1473.7 and the passage of prop. 64." (ECF No. 34 at 3.) He contends that even with "due diligence, [he] could not have learned about Penal Code 1473.7 and its remedial effects to his conviction." (*Id.*) This explanation fails to set forth good cause for Petitioner's failure to exhaust his state judicial remedies with respect to his two unexhausted claims. Substantively, Petitioner's two unexhausted claims are not impacted by either California Penal Code § 1473.7 and Proposition 64. And, contrary to what may be Petitioner's belief, § 1473.7 and Proposition 64 did not create a new excuse for a federal habeas petitioner's failure to exhaust his state court remedies.

In addition, Petitioner asserts that he failed to fully exhaust his habeas claims in state court because he was not informed by his post-conviction counsel, Jamahl C. Kersey and Alex A. Kannan, that he was required to move to withdraw his guilty plea and obtain a certificate of probable cause before challenging the validity of his guilty plea on collateral review. (ECF No. 34 at 2.) Petitioner asserts that he did not learn about these necessary state law procedural requirements until the habeas claims that he filed with the California Court of Appeal were denied as procedurally barred. (*Id.*) In support of this argument, Petitioner attaches to his motion the transcript of a January 21, 2015 hearing before the San Diego County Superior Court at which attorney Alex Kannan appeared. (*See id.* at 25.) At the hearing, Mr. Kannan stated, "Mr. Kersey and I believe this is the better avenue for Mr. Yagao than a 1018 motion to withdraw a guilty plea. We find that the grounds Mr. Yagao is alleging are better suited for a habeas corpus petition." (*Id.* at 25.)

While the Ninth Circuit has held that ineffective assistance of counsel by post-conviction counsel can be good cause for a *Rhines* stay, *see Blake*, 745 F.3d at 983–84, this Court is not persuaded that, in this case, the alleged inadequacy of Petitioner's post-conviction counsel establishes a reasonable excuse for Petitioner's failure to properly exhaust his two unexhausted claims. Despite Petitioner's learning from the California Court of Appeal's decision that his habeas claims were procedurally barred, Petitioner nonetheless filed a subsequent habeas petition with the California Supreme Court. (*See* ECF No. 20-7.) Petitioner fails to show how his post-conviction counsel's advice to collaterally attack his guilty plea without first moving to withdraw his plea provides a reasonable excuse for his failure to specifically include his two unexhausted claims in the habeas petition that he filed with the California Supreme Court.

For the reasons above, the Court finds that neither of Petitioner's explanations sets forth good cause for his failure to exhaust his state judicial remedies with respect to his two unexhausted claims. While a failure to set forth good cause is sufficient to deny a motion for a stay and abeyance under the *Rhines* test, the Court also recommends that Petitioner's motion be denied on the basis that Petitioner's unexhausted claims plainly lack merit.[4]

### 2.    Merits of Petitioner's Unexhausted Claims

The Ninth Circuit recently adopted the following standard with respect to whether a claim raised on federal habeas review is plainly meritless:

> In determining whether a claim is "plainly meritless," principles of comity and federalism demand that the federal court refrain from ruling on the merits of the claim unless "it is perfectly clear that the petitioner has no hope of prevailing." *Cassett v. Stewart*, 406 F.3d 614, 624 (9th Cir. 2005). "A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted." *Id.* (citing *Rose v. Lundy*, 455 U.S. 509, 515, 102 S. Ct. 1198, 71 L.Ed.2d 379 (1982)).

---

[4]  Having reviewed Petitioner's motion for a stay and abeyance, the Court finds that Petitioner has not engaged in abusive litigation tactics and therefore does not analyze this component of the *Rhines* test. *See Rhines*, 544 U.S. at 277–78.

*Dixon*, 847 F.3d at 722.

### i.     Counsel's Failure to File a Motion to Suppress Evidence

Petitioner's first unexhausted habeas claim is that he received ineffective assistance of counsel when his trial counsel failed to file a motion to suppress certain evidence collected by the police officers who effected his arrest. (ECF No. 6 at 26–27.) Specifically, Petitioner contends that under *Riley v. California*, 134 S. Ct. 2473 (2014), his trial counsel should have moved to suppress the text messages that were obtained through a search of Petitioner's cell phone at the time of the arrest and used to support the charges brought against him. (*Id.*)

To establish a colorable ineffective assistance of counsel claim, a petitioner must show that his counsel's performance "fell below an objective standard of reasonableness" and that this deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 686–88 (1984). A court need not address both the deficient performance and prejudice components of an ineffective assistance of counsel claim if the petitioner fails to make a sufficient showing of either one. *Id.* at 697.

In *Riley v. California*, the United States Supreme Court held that the search incident to arrest doctrine does not permit warrantless searches of the digital data contained on an arrestee's cellular phone. *Riley*, 134 S. Ct. at 2485–86. Prior to *Riley*, it was permissible under California law for a police offer to, "without obtaining a warrant, inspect a mobile phone carried by a suspect at the time of arrest, by viewing or listening to its electronically stored data, including text messages, even when a substantial time has elapsed since the arrest." *People v. Diaz*, 51 Cal.4th 84 (2011), *abrogated by People v. Macabeo*, 1 Cal.5th 1206 (2016).

*Riley* was decided on June 25, 2014. In the instant case, Petitioner was criminally charged on February 10, 2014 (ECF No. 20-5 at 38–40), and sentenced on June 2, 2014 (ECF No. 6 at 86–91). Thus, the rule established in *Riley* was not in effect at any time that Petitioner's trial counsel could have brought a suppression motion, and counsel therefore had a reasoned basis for not filing the motion. Under the then-current state of the law, it

was reasonable to conclude that the search of Petitioner's cellular phone was permissible and that a motion to suppress the text message evidence obtained via the search would have been fruitless. As it was reasonable for Petitioner's counsel not to file a motion to suppress the text message evidence during the time of Petitioner's trial court proceedings, Petitioner fails to raise a colorable claim that his counsel's decision "fell below an objective standard of reasonableness." *See United States v. Jones*, No. 15-55003, 2017 WL 2462819, at *1 (9th Cir. June 7, 2017) (holding that counsel's performance was not constitutionally deficient where a motion to suppress the search of a petitioner's cell phone would have been unmeritorious at the time of the petitioner's trial, which pre-dated *Riley*); *cf. Lilly v. Lewis*, 151 F. App'x 579, 581 (9th Cir. 2005) (holding that it was reasonable for petitioner's counsel not to file a suppression motion under the state of the law at the time the motion could have been brought, even though the California Supreme Court subsequently concluded that the search at issue was impermissible). The performance of Petitioner's counsel was not deficient because she failed to anticipate a future ruling of the United States Supreme Court. *See United States v. Zamudio*, 787 F.3d 961, 966 (9th Cir. 2015) ("*Strickland* does not require attorneys to make arguments based on cases that have not yet been decided."). Accordingly, "it is perfectly clear that [P]etitioner has no hope of prevailing" on this ineffective assistance of counsel claim in the state courts.[5] *See Dixon*, 847 F.3d at 722 (quoting *Cassett*, 406 F.3d at 624).

### ii. Trial Court's Failure to Conduct Detailed Inquiry into Guilty Plea

Petitioner's second unexhausted habeas claim is that the trial court erred in failing to conduct a detailed inquiry into whether Petitioner's guilty plea was the product of coercion. (ECF No. 6 at 9, 25.) Petitioner asserts that the "trial court ha[d] the obligation to determine whether the plea was entered freely and voluntarily, and to conduct the inquiry

---

[5] Because Petitioner fails to establish that his counsel's performance was deficient, the Court need not address whether Petitioner was prejudiced as a result of his counsel's conduct. *See Strickland*, 466 U.S. at 967.

necessary to make the determination," and "the court did not do so here." (*Id.* at 25.) Like Petitioner's first unexhausted claim, the Court finds that this claim is plainly meritless.

The federal due process clause requires that a guilty plea be knowing, intelligent, and voluntary. *McCarthy v. United States*, 394 U.S. 459, 466 (1969); *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). A guilty plea is knowing, intelligent, and voluntary when the defendant has notice of the nature of the charges against him and he understands the nature of the three critical constitutional rights that will be waived by his guilty plea—the right to a trial by jury, the right to confront his accuser, and the privilege against self-incrimination—and the consequences of his plea, including the range of allowable punishment that will result from the plea. *Tanner v. McDaniel*, 493 F.3d 1135, 1146–47 (9th Cir. 2007) (citing *Boykin*, 395 U.S. at 243–44; *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006), *cert. denied*, 551 U.S. 1118 (2007)). The Supreme Court has recognized that a guilty plea obtained through coercion is involuntary. *See Brady v. United States*, 397 U.S. 742, 750 (1970).

While the Constitution requires that a guilty plea be entered into knowingly and voluntarily, "the right to due process does not impose strict requirements on the mechanics of plea proceedings," such as requiring state courts to conduct detailed inquiries into whether pleas are entered into knowingly and voluntarily. *United States v. Escamilla-Rojas*, 640 F.3d 1055, 1062 (9th Cir. 2011). "Rather, the right simply requires the record to 'disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.'" *Id.* (quoting *Brady*, 397 U.S. at 747 n.4). As long as the record demonstrates that a guilty plea is knowing and voluntary, "no particular ritual or showing on the record is required." *United States v. McWilliams*, 730 F.2d 1218, 1224 (9th Cir. 1984); *accord Jones v. Knipp*, 2:11-cv-1006 JAM GGH P., 2013 WL 6145245, at *10 (E.D. Cal. Nov. 21, 2013) (citing *McWilliams*); *see also Loftis v. Almager*, 704 F.3d 645, 647 (9th Cir. 2012) ("While Fed.R.Crim.P. 11 and its state analogs may require additional [procedural] safeguards, violations of such rules do not ordinarily render a plea constitutionally infirm and thus vulnerable to collateral attack.").

Here, the record that was before the trial court established that Petitioner's guilty plea was entered knowingly, intelligently, and voluntarily. First, Petitioner's written guilty plea form demonstrates that Petitioner was advised of his rights and the charges against him and that he understood the consequences of entering his guilty plea. Petitioner's guilty plea form contained, *inter alia*, the following statements:

- "I am entering my plea freely and voluntarily, without fear or threat to me or anyone closely related to me."

- "**I understand** that . . . [I] have the **following constitutional rights, which I now give up** to enter my plea of guilty/no contest:

  - I have the right to a **speedy and public trial by jury**. **I now give up this right.**

  - I have the right to **confront and cross-examine all the witnesses** against me. **I now give up this right.**

  - I have the right to **remain silent** (unless I choose to testify on my own behalf). **I now give up this right**.

  - I have the right to **present evidence in my behalf** and to have the court subpoena my witnesses at no cost to me. **I now give up this right.**"

- "I understand that if I am not a U.S. citizen, the plea of Guilty/No Contest may result in my removal/deportation, exclusion from admission to the U.S. and denial of naturalization. Additionally, if this plea is to an 'Aggravated Felony' listed on the back of this form, then I will be deported, excluded from admission to the U.S., and denied naturalization."

(ECF No. 6 at 94–95 (emphasis in original).) Petitioner acknowledged each of these statements by initialing the boxes next to them on the plea form. (*See id.*) Petitioner also signed the plea form, declaring "under penalty of perjury that [he has] read, understood, and initialed each item above and . . . everything on the form . . . is true and correct." (*Id.* at 96.) Petitioner's trial counsel additionally signed the plea form, confirming that she "personally read and explained to [Petitioner] the entire contents of th[e] plea form" and

"discussed all charges and possible defenses with the defendant, and the consequences of th[e] plea, including any immigration consequences." (*Id.*)

Second, the transcript of Petitioner's change of plea hearing demonstrates that Petitioner entered his guilty plea knowingly, intelligently, and voluntarily. (*See* ECF No. 6 at 76–79.) During the hearing, the court asked Petitioner if he reviewed the aforementioned plea form with his attorney. He responded in the affirmative. (*Id.* at 77.) He was then asked by the court if he had any questions about the form. He responded in the negative. (*Id.* at 78.) Additionally, the court asked Petitioner whether the charge brought against him—that he unlawfully transported more than 28.5 grams of marijuana—was a true statement. (*Id.*) Petitioner responded that it was. (*Id.*) The court further asked Petitioner whether he understood that "the court will place [him] on probation" and that "if he [is not] a United States citizen, [his] plea of guilty will result in removal or deportation, exclusion from admission to the United States, and denial of naturalization." (*Id.*) Petitioner responded, "Yes, your Honor," to both inquiries. (*Id.*)

Third, Petitioner's prior experience in the criminal justice system demonstrates that he entered his guilty plea knowingly, intelligently, and voluntarily. In 2006, Petitioner pleaded guilty to a charge under California Health and Safety Code § 11360(a), the *same offense* at issue here. (ECF No. 6 at 104.) Petitioner admits that removal proceedings were initiated against him after pleading guilty in 2006 and that he was granted a one-time cancellation of removal at that time. (*Id.*) Thus, Petitioner was well aware of the consequences of his pleading guilty to a § 11360(a) charge for the second time. *See Marshall v. Lonberger*, 459 U.S. 422, 437 (1983) (considering a defendant's experience in the criminal justice system as a factor that ultimately led to the finding that the defendant entered his guilty plea knowingly and voluntarily). Evidence of Petitioner's prior conviction under California Health and Safety Code § 11360(a) was in the trial court record and considered by the trial court at Petitioner's sentencing hearing. (*See id.* at 88–90.)

Petitioner's plea form, the change of plea hearing transcript, and Petitioner's prior experience in the criminal justice system patently demonstrate that Petitioner entered his

guilty plea knowingly, intelligently, and voluntarily. Accordingly, the Court concludes that "it is perfectly clear that [P]etitioner has no hope of prevailing" on this claim in the state courts. *See Dixon*, 847 F.3d at 722 (quoting *Cassett*, 406 F.3d at 624).

For the reasons above, the Court concludes that Petitioner fails to set forth good cause for his failure to exhaust his two unexhausted claims and that both of the claims are plainly meritless. Accordingly, granting Petitioner's motion for a stay and abeyance would be inappropriate under the standard set forth by the United States Supreme Court in *Rhines*, and the Court therefore recommends that Petitioner's motion for a stay and abeyance be **DENIED**.

**B. Petition for Writ of Habeas Corpus**

**1. The Court Should Exercise its Discretion to Deny Petitioner's Unexhausted Claims**

Section 2254(b)(2) of the AEDPA provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Because the exhaustion requirement exists as a matter of comity, district courts have jurisdiction to deny an unexhausted claim on the merits only "when it is perfectly clear that the applicant does not raise even a colorable federal claim" and therefore "has no hope of prevailing" before the state courts. *Cassett*, 406 F.3d at 623–24. "A contrary rule would deprive state courts of the opportunity to address a colorable federal claim in the first instance and grant relief if they believe it is warranted." *Id.* at 624. If there is any question as to whether the petitioner has stated a colorable federal claim, the district court may not consider the merits of the claim. *Id.* at 623.

For the reasons set forth above, Petitioner's two unexhausted claims—that he received ineffective assistance of counsel when his trial counsel failed to file a motion to suppress under *Riley v. California* and that the trial court erred in failing to conduct a detailed inquiry into whether his guilty plea was coerced—fail to raise even colorable federal claims. Accordingly, the Court recommends that the District Court exercise its

17

discretion to **DENY** these two claims on the merits, despite Petitioner's failure to fully exhaust his state judicial remedies with respect to the claims.

### 2. The Court Should Deny Petitioner's Remaining Fully Exhausted Claims

#### i. Ineffective Assistance of Counsel

The first of Petitioner's three fully exhausted federal habeas claims is one of ineffective assistance of counsel. Petitioner asserts that his trial counsel's performance was deficient for the following three reasons: (1) his counsel failed to advise him of the adverse immigration consequences of his guilty plea (ECF No. 6 at 18–20); (2) his counsel failed to investigate and utilize all available defenses and to adequately negotiate a plea agreement on his behalf (*id.* at 21–22); and (3) his counsel coerced him into entering his guilty plea (*id.* at 18–19). Respondent argues that Petitioner's ineffective assistance of counsel claim should be denied because the California Court of Appeal's finding that this claim is both procedurally barred and without merit was objectively reasonable and neither contrary to nor an unreasonable application of clearly established U.S. Supreme Court precedent. (ECF No. 19-1 at 8–13.)

#### a. Procedural Default

The Supreme Court has long held that federal courts may not review a question of federal law decided by a state court if the state court's decision rests on a state law ground that is independent of the federal question and adequate to support the judgment. *Lee v. Kemna*, 534 U.S. 362, 375 (2002); *Coleman v. Thompson,* 501 U.S. 722, 729 (1991). This rule applies regardless of whether the state law ground is substantive or procedural. *Coleman*, 501 U.S. at 729. A state procedural rule is "independent" of federal law if the rule is not interwoven with federal law. *Harris v. Reed*, 489 U.S. 255, 265 (1989); *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983). A state procedural rule is "interwoven" with federal law if the state has made the application of the law depend on an antecedent ruling on federal law, such as the determination of whether a federal constitutional error has been committed. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). A state procedural rule is "adequate" to bar federal habeas review only if it is "clear, consistently applied, and

well-established at the time of the petitioner's purported default." *Hanson v. Mahoney*, 433 F.3d 1107, 1113 (9th Cir. 2006) (quoting *Calderon v. U.S. Dist. Court (Bean)*, 96 F.3d 1126, 1129 (9th Cir. 1996), *cert. denied sub nom. Calderon v. Bean*, 520 U.S. 1204 (1997)).

Procedural default is an affirmative defense in a habeas proceeding, and therefore the respondent has the initial burden of establishing that a failure to satisfy a state procedural rule forecloses federal review. *Insyxiengmay v. Morgan*, 403 F.3d 657, 665–66 (9th Cir. 2005); *Bennett v. Mueller*, 322 F.3d 573, 584–85 (9th Cir. 2003). Once the respondent pleads the affirmative defense of an independent and adequate state procedural bar, the burden shifts to the petitioner to challenge the independence or adequacy of the procedural bar. *Bennett*, 322 F.3d at 584–85. A petitioner does this by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrat[ing] that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Wainwright v. Sykes*, 433 U.S. 72, 84 (1977).

Petitioner raised all aspects of his ineffective assistance of counsel claim in the petitions for review that he filed with the San Diego County Superior Court (ECF No. 20-2 at 6–9), the California Court of Appeal (ECF No. 20-5 at 8–15), and the California Supreme Court (ECF No. 20-7 at 13–27). The California Supreme Court denied the petition without comment (ECF No. 20-8) and, thus, there is no reasoned decision from the state's highest court. Therefore, this Court "looks through" to the last reasoned state court decision to address Petitioner's claim and presumes that it provides the basis for the higher court's denial of Petitioner's claim. *See Ylst*, 501 U.S. at 805–06. The California Court of Appeal, before addressing the merits of Petitioner's ineffective assistance of counsel claim in an alternate holding, stated:

> The petition is procedurally barred. There is no indication in the record that Yagao moved the superior court to withdraw the guilty plea. (Pen. Code, § 1018.) "[A] defendant should not be allowed to raise on habeas corpus an issue that could have been raised at trial." (*In re Seaton* (2004) 34 Cal.4th 193, 200, italics omitted.) There is also no indication in the record that Yagao

requested and obtained the certificate of probable cause required by Penal Code section 1237.5 to challenge the validity of a guilty plea on appeal. "A defendant who challenges the validity of such a plea on the ground that trial counsel rendered ineffective assistance in advice regarding the plea may not circumvent the requirements of section 1237.5 by seeking a writ of habeas corpus. (*In re Chavez* (2003) 30 Cal.4th 643, 651.)

(ECF No. 20-6 at 1.) The court then addressed the merits of Petitioner's ineffective assistance claim, stating:

The petition also lacks merit. A petitioner seeking a writ of habeas corpus bears a heavy burden to plead and prove sufficient grounds for relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 474.) "The petition should both (i) state fully and with particularity the facts on which relief is sought [citations], as well as (ii) include copies of reasonably available documentary evidence supporting the claim, including pertinent portions of trial transcripts and affidavits or declarations." (*Ibid*.) To establish his claim of ineffective assistance of counsel, Yagao must establish that counsel failed to advise him that he could be deported if he pleaded guilty, and that had counsel so advised him he would not have pleaded guilty. (See *Padilla v. Kentucky* (2010) 559 U.S. 356, 366-369, 372; *People v. Soriano* (1987) 194 Cal.App.3d 1470, 1478-1482.) Documents that Yagao attached to his petition negate his allegation that counsel did not advise him of the immigration consequences of the guilty plea. The plea form Yagao signed states: "I understand that if I am not a U.S. citizen, the plea of Guilty/No Contest may result in my removal/deportation, exclusion from admission to the U.S. and denial of naturalization." Yagao acknowledged this statement by initialing a box next to it on the plea form. The plea form also states that Yagao's counsel "personally read and explained to [Yagao] the entire contents of this plea form" and "discussed…the consequences of this plea, including any immigration consequences." The transcript of the change of plea hearing constitutes additional evidence that Yagao was advised of the immigration consequences of his guilty plea. When the court asked Yagao, "Did you go over the form with your attorney," he responded, "Yes." The court later asked Yagao, "Do you understand that, if you are not a United States citizen, your plea of guilty will result in removal or deportation, exclusion from admission to the United States, and denial of naturalization?" Yagao responded, "Yes, your honor." Yagao thus cannot establish the first element of his ineffective assistance of counsel claim.

(ECF No. 20-6 at 2.)

That the California Court of Appeal alternately reached the merits of Petitioner's claim does not preclude a finding that the California Supreme Court adopted the Court of Appeal's procedural ruling. The Supreme Court made clear in *Harris v. Reed* that

> [A] state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. *See Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S. Ct. 183, 184, 80 L.Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, [*Wainwright v.*] *Sykes* [433 U.S. 72 (1977)] curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Harris*, 489 U.S. at 264 n.10) (emphasis in original).

Respondent, in his answer, correctly points out that the Ninth Circuit has held that the failure to obtain a certificate of probable cause under California Penal Code § 1237.5 is an independent and adequate state procedural bar. *Strong v. Sullivan*, 265 F. App'x 489, 490 (9th Cir. 2008); *see also Rodriguez v. Hernandez*, No. 08cv0856-LAB (RBB), 2009 WL 2525444, at *5 (S.D. Cal. Aug. 17, 2009) (applying *Strong*). Thus, Respondent has met his initial burden of proof and the burden has shifted to Petitioner to demonstrate either cause and prejudice to excuse the default or that a fundamental miscarriage of justice would result from the failure of this Court to reach the merits of his claim. *See Coleman*, 501 U.S. at 750.

Petitioner addresses cause for his procedural default in his filing titled, "Amended Supplemental Brief & Prayer for Relief," which the Court construes as Petitioner's traverse. (ECF No. 29.) In this document, Petitioner asserts that he did not file a motion to withdraw his guilty plea under California Penal Code § 1018 because he was advised not to do so by his post-conviction counsel. (*Id.* at 1.) In support of this argument, Petitioner attaches the transcript of a January 21, 2015 hearing involving the San Diego County Superior Court and one of Petitioner's post-conviction attorneys, Mr. Kannan. (*Id.*

at 8.)  At the hearing, Mr. Kannan stated, "Mr. Kersey and I believe this is the better avenue for Mr. Yagao than a 1018 motion to withdraw a guilty plea.  We find that the grounds Mr. Yagao is alleging are better suited for a habeas corpus petition." (*Id.*)

In addition, Petitioner contends that both § 1018 and § 1237.5 "have the effect of frustrating federal rights" and that "if a state procedural rule frustrates the exercise of a federal right, that rule is 'inadequate' to preclude federal courts from reviewing the merits of the federal claim." (*Id.* at 1.)  Petitioner further contends that, under *People v. Kraus*, 47 Cal. App. 3d 568 (1975), "Penal Code 1237.5 is probably not required even if the conviction was based on a plea of guilty or no contest." (*Id.*)

The United States Supreme Court recently addressed when a post-conviction attorney error may constitute "cause" to excuse a procedural default.  In *Davila v. Davis*, the Court noted that, typically, "attorney error committed in the course of state postconviction proceedings—for which the Constitution does not guarantee the right to counsel, *see Murray v. Giarratano*, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (plurality opinion)—cannot supply cause to excuse a procedural default that occurs in those proceedings."  *Davila v. Davis*, No. 16-6219, 2017 WL 2722418, at *6 (U.S. June 26, 2017).  However, the Court explained, a narrow, equitable qualification of this rule was established in *Martinez v. Ryan*, 566 U.S. 1 (2012).  *Id.* at *7.  In *Martinez*, the Supreme Court announced that a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of trial counsel "where state law requires prisoners to raise claims of ineffective assistance of trial counsel 'in an initial-review collateral proceeding,' rather than on direct appeal" and "the default results from the ineffective assistance of the prisoner's counsel in the collateral proceeding."  *Id.* (quoting *Martinez*, 566 U.S. at 16–17).  The *Martinez* Court clarified that to demonstrate cause for a procedural default, a petitioner must show that his post-conviction counsel was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668 (1984) and that the underlying ineffective assistance of trial counsel claim is a substantial one.  *Martinez*, 566 U.S. at 14.  To demonstrate the substantiality of the underlying ineffective assistance

22

of trial counsel claim, the petitioner must demonstrate that the underlying claim has some merit. *Id.*

Thus, to determine whether federal habeas review of Petitioner's ineffective assistance of counsel claim is foreclosed due to an appropriately applied state procedural bar, this Court must determine: (1) whether California law requires prisoners to raise claims of ineffective assistance of trial counsel in an initial-review collateral proceeding rather than on direct appeal; (2) whether Petitioner's post-conviction counsel in his initial-review collateral proceeding was ineffective under the *Strickland* standards; (3) whether Petitioner's underlying ineffective assistance of trial counsel claim has some merit and is thus "substantial"; (4) whether, under California state law, California Penal Code § 1237.5 is not applicable in Petitioner's case, as Petitioner alleges; and (5) assuming Petitioner establishes sufficient cause for his default, whether Petitioner can overcome the procedural default by showing prejudice. The Ninth Circuit has indicated that because procedural bar issues "are not infrequently more complex than the merits issues presented by the appeal . . . it may well make sense in some instances to proceed to the merits if the result will be the same." *Franklin v. Johnson*, 290 F.3d 1223, 1232 (9th Cir. 2002); *see also Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("We do not mean to suggest that the procedural-bar issue must invariably be resolved first; only that it ordinarily should be. Judicial economy might counsel giving [a merits question] priority . . . if it were easily resolvable against the habeas petitioner."); *cf.* 28 U.S.C. § 2254(b)(2) (permitting a federal court to deny a habeas petition on the merits notwithstanding the applicant's failure to exhaust state remedies). In this case, the Court finds that the interests of judicial economy support addressing the merits of Petitioner's ineffective assistance of trial counsel claim without first determining whether the claim is procedurally defaulted. It is easily determinable that Petitioner's ineffective assistance of counsel claim fails on the merits, and thus the result is the same as if the claim were procedurally barred. *See Lambrix*, 520 U.S. at 525.

///

///

### b. Merits

Under clearly established federal law, as determined by the Supreme Court, a defendant is entitled to "the effective assistance of competent counsel" before deciding whether to plead guilty. *Padilla v. Kentucky,* 559 U.S. 356, 364 (2010) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "[C]laims of ineffective assistance of counsel in the plea bargain context are governed by the two-part test set forth in *Strickland*." *Missouri v. Frye*, 566 U.S. 133, 141 (2012) (citing *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). To succeed on an ineffective assistance of counsel claim, a petitioner first must show that his attorney's representation "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. This requires showing that the petitioner's counsel committed errors that were objectively deficient, unreasonable, and "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687.

Second, a petitioner must show that his counsel's deficient performance prejudiced the defense. *Id.* This requires showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* In the context of a guilty plea challenge based on ineffective assistance of counsel, a petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. A court need not address both *Strickland*'s deficiency prong and prejudice prong if the petitioner fails to make a sufficient showing of either one. *Strickland*, 466 U.S. at 697.

In the context of federal habeas review, "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential.'" *Harrington*, 562 U.S. at 105 (quoting *Strickland*, 466 U.S. at 689). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla*, 559 U.S. at 371.

As discussed above, Petitioner raised all aspects of his ineffective assistance of counsel claim in the habeas petitions that he presented to the three tiers of the California judiciary. (ECF Nos. 20-2 at 6–9; 20-5 at 8–15; 20-7 at 13–27.) The California Supreme Court denied the petition before it without comment (ECF No. 20-8) and, thus, there is no reasoned decision from the state's highest court on this claim. Therefore, this Court "looks through" to the underlying California Court of Appeal decision and presumes that it provides the basis for the Superior Court's denial of the claim. *See Ylst*, 501 U.S. at 804.

In addressing the merits of Petitioner's ineffective assistance of counsel claim, the California Court of Appeal followed the clearly established law set forth in *Strickland* and *Padilla* regarding challenges to guilty pleas based on ineffective assistance of counsel. (*See* ECF No. 20-6 at 2.) Consistent with these cases, the California Court of Appeal recognized that to prevail on a claim of ineffective assistance counsel, Petitioner must establish "that counsel failed to advise him that he could be deported if he pleaded guilty, and that had counsel so advised him he would not have pleaded guilty." (*Id.* (citing *Padilla*, 559 U.S. at 366–69).) The court denied Petitioner's ineffective assistance of counsel claim on the basis that "[d]ocuments that Yagao attached to his petition," primarily his plea form and the transcript of the change of plea hearing of his guilty plea, "negate his allegation that counsel did not advise him of the immigration consequences of the guilty plea." (*Id.*) For the reasons set forth below, this Court concludes that the holding of the California Court of Appeal is neither contrary to, nor an unreasonable application of, clearly established Supreme Court law, nor is it based on an unreasonable determination of the facts presented during the state court proceedings.

### 1. Failure to Advise of Immigration Consequences

Petitioner alleges that his counsel failed to advise him of the adverse immigration consequences of his guilty plea. (ECF No. 6 at 18–20.) Specifically, he asserts that his counsel indicated to him that accepting a plea bargain that included work furlough and "avoiding any sort of custody" would prevent the triggering of immigration removal proceedings. (*Id.* at 18.)

In *Padilla*, the Supreme Court established that "counsel must inform her client whether his plea carries a risk of deportation" and that failure to do so could constitute deficient performance under the first prong of *Strickland*. *Padilla*, 559 U.S. at 374. Here, Petitioner pleaded guilty to a felony drug violation for the transportation of more than 28.5 grams of marijuana. (ECF No. 6 at 94–96.) The deportation consequence of his guilty plea is easily determinable from the relevant federal removal statute as being "presumptively mandatory." S*ee* 8 U.S.C. § 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable."). Thus, Petitioner's trial counsel clearly had a duty to advise Petitioner of the immigration consequences of his guilty plea.

Petitioner fails to establish that his counsel failed to advise him, or that his counsel misadvised him, of the immigration consequences of his plea. As the California Court of Appeal correctly pointed out, the documents in the record negate Petitioner's allegation that his counsel failed to advise him of such. First, the formal declaration of Petitioner's trial counsel states that she shared Petitioner's concerns about the immigration consequences of his criminal charges and that she specifically reviewed with Petitioner the paragraph of the written plea form that delineates and explains the immigration consequences of his plea. (ECF No. 6 at 72–73.) The declaration further states that Petitioner's trial counsel "made it clear to [Petitioner] under the plea agreement that he very well may get jail, as indicated on the form 'alts to custody indicated *if* available.'" (*Id.* at 73 (emphasis in original).) Counsel's declaration further states, "It is <u>never</u> my custom or practice to tell clients facing criminal charges that they will or will not get picked up by Immigration and Customs Enforcement (ICE). I have certainly never told any of my clients, nor Mr. Yagao in particular, that if he was sentenced to work furlough, INS would not apprehend him and place him in removal proceedings and INS would do so if he was sentenced to jail." (*Id.* (internal citations omitted)).

Second, counsel's declaration is corroborated by Petitioner's initials and signature on his written plea form. (ECF No. 6 at 94–96.) As noted by the California Court of Appeal, Petitioner initialed the box that corresponded with the statement: "I understand that if I am not a U.S. citizen, this plea of Guilty/No Contest may result in my removal/deportation." (*Id.* at 95.) Petitioner also signed the plea form, declaring "under penalty of perjury that [he has] read, understood, and initialed each item above and . . . everything on the form . . . is true and correct." (*Id.* at 96.) Petitioner's counsel additionally signed the form, confirming that she "personally read and explained to [Petitioner] the entire contents of th[e] plea form" and "discussed . . . the consequences of th[e] plea, including any immigration consequences." (*Id.*)

Third, as noted in the California Court of Appeal's decision, the transcript of Petitioner's March 25, 2014 change of plea hearing provides further evidence that Petitioner's trial counsel's performance was not deficient. (*See* ECF No. 6 at 76–80.) At the hearing, the trial court questioned Petitioner as to whether he reviewed the guilty plea form with his attorney, and Petitioner responded that he had. (*Id.* at 77.) The court also asked, "Do you understand that, if you are not a United States citizen, your plea of guilty will result in removal or deportation, exclusion from admission to the United States, and denial of naturalization?" (*Id.* at 78.) Petitioner responded, "Yes, your honor." (*Id.*)

The documents attached to Petitioner's federal habeas petition establish that Petitioner's trial counsel adequately advised Petitioner of the immigration consequences of his guilty plea. Thus, Petitioner fails to demonstrate that his counsel's performance "fell below an objective standard of reasonableness."[6] *Strickland*, 466 U.S. at 688. Accordingly, the California Court of Appeal's adjudication of this claim did not involve an unreasonable application of *Strickland*, nor was it based on an objectively unreasonable determination of the facts in the record, and therefore Petitioner is not entitled to federal

---

[6] Because Petitioner fails to satisfy the first prong under *Strickland*, the Court need not consider whether Petitioner was prejudiced. *See Strickland*, 466 U.S. at 697.

habeas relief as to this aspect of his ineffective assistance of counsel claim. *See* 28 U.S.C. § 2254(d).

### 2.      Failure to Utilize Defenses and Negotiate Adequately

Petitioner alleges next that he received ineffective assistance of counsel because his trial counsel failed to investigate and utilize all available defenses to his charges and to adequately negotiate a plea agreement on his behalf. (ECF No. 6 at 21–22.) Petitioner asserts that his counsel "ignored the available forms of defense to appropriately defend [him] from automatic deportation" (*id.* at 21) and "did not argue for defendant and discouraged him from contesting the inconsistencies of the evidence and police report" (*id.* at 19). Petitioner further states that "[b]eing sentenced to 'alternatives to custody' and 'avoiding custody' did not prevent mandatory detention in removal proceedings and was not an intelligent choice among the alternative courses of action available and were not options instructed by the (ILRC) that counsel consulted." (*Id.* at 21.) Petitioner contends that counsel should have obtained a more favorable plea bargain with the District Attorney to allow him to plead to a non-deportable offense. (*Id.* at 19.)

While Petitioner is guaranteed effective assistance of counsel under the Sixth Amendment, the purpose of this Sixth Amendment guarantee "is not to improve the quality of legal representation" but "simply to ensure that criminal defendants receive a fair trial." *Strickland*, 466 U.S. at 689. Accordingly, counsel's representation must not be assessed according to the best possible defense strategies pursued but instead according to whether counsel's performance was objectively reasonable considering the circumstances. *See id.* at 687–88. In any case presenting an ineffectiveness claim, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. As set forth by the Supreme Court in *Strickland*:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf. Engle v. Isaac*, 456 U.S. 107, 133–34, 102 S. Ct. 1558, 1574–75, 71 L.Ed.2d 783 (1982). A fair assessment of attorney performance requires that every effort be made to

eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy." *See Michel v. Louisiana*, 350 U.S. [91,] 101 [(1955)].

*Id.*

Here, Petitioner fails to establish that his counsel's performance in negotiating his plea arrangement was anything less than sound trial strategy. While Petitioner asserts that "a non-deportable plea could have been agreed upon" and that "[i]t is reasonably probable that the District Attorney would have accepted a non-deportable plea in exchange for a proportionate sentence and conviction" (ECF No. 6 at 20–21), Petitioner provides no evidence that his counsel failed to attempt to negotiate a non-deportable plea on Petitioner's behalf and that it was in fact reasonably probable that the District Attorney would agree to such a plea.

While Petitioner may be unsatisfied with his counsel's specific strategy, he overlooks the fact that his counsel was able to negotiate a plea bargain in which two of the three charges filed against him, including one charge for an aggravated felony that would have exposed Petitioner to several years in custody and removal proceedings if convicted, were dropped. (*See* ECF No. 20-4 at 5.) Petitioner additionally overlooks the fact that the District Attorney represented to Petitioner's trial counsel that if Petitioner did not plead guilty, then the District Attorney would amend the complaint to include a more severe charge of transportation for the purpose of sale, which also would have exposed Petitioner to custody and removal proceedings. (ECF No. 6 at 73.)

In addition, the declaration of Petitioner's trial counsel indicates that she took what reasonable steps she could to reduce the likelihood that Petitioner would be contacted by immigration officials after his conviction by reducing the likelihood of his serving time in custody. Acknowledging that it was possible that Petitioner could be placed in custody

29

under the terms of his guilty plea, counsel encouraged Petitioner to enter a residential drug program in advance of his sentencing hearing in hopes of Petitioner avoiding a custodial sentence. (ECF No. 6 at 72.) Counsel even went as far as sending Petitioner a list of residential treatment programs for him to contact. (*Id.*)

For the reasons above, Petitioner fails to overcome the strong presumption that his counsel's conduct was sound trial strategy that falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689. Accordingly, the California Court of Appeal's adjudication of this claim did not involve an unreasonable application of *Strickland* and was not based on an objectively unreasonable determination of the facts, and therefore Petitioner is not entitled to federal habeas relief as to this aspect of his ineffective assistance of counsel claim. *See* 28 U.S.C. § 2254(d).

### 3. Coercion to Plead Guilty

Petitioner also alleges that he received ineffective assistance of counsel on the basis that his trial counsel coerced him to enter the guilty plea. (ECF No. 6 at 18–19.) Petitioner alleges that he was "coerced into believing he needed to '*avoid any sort of custody*' to prevent a warrant being issued by DHS/ICE" (*id.* at 18) and that he "agreed to plead guilty on the record but only after being coerced into believing deportation no longer applied to him because he was avoiding custody by being sentenced to work furlough" (*id.* at 19).

It is clearly established federal law that when a criminal defendant pleads guilty on the advice of counsel, he may attack the voluntary and intelligent nature of his guilty plea only by demonstrating that his counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." *Tollett v. Henderson*, 411 U.S. 258, 265–67 (1973). A guilty plea entered on the advice of trial counsel is involuntary when produced "by actual or threatened physical harm," *Brady*, 397 U.S. at 750, or "induced by promises or threats which deprive it of the nature of a voluntary act," *Machibroda v. United States*, 368 U.S. 487, 493 (1972).

Here, the advice provided by Petitioner's trial counsel did not amount to coercion. Petitioner fails to demonstrate that counsel made any representation or took any action that

deprived him of his ability to voluntarily enter a guilty plea. To the contrary, and as discussed above in the context of Petitioner's first ineffective assistance of counsel claim, counsel acted competently and fairly in advising Petitioner of the consequences of his guilty plea. Counsel's declaration and Petitioner's written plea form demonstrate that counsel took reasonable steps to ensure that Petitioner was aware of and understood the consequences of his guilty plea well in advance of his entering his plea. (ECF No. 6 at 73, 94–96.) She advised Petitioner that "she would attempt to get alternatives to custody, including work furlough, RRC or ideally residential rehabilitation," but that under the conditions of his plea agreement, he could receive these alternatives to custody only *if* they were made available to him by the trial court. (*Id.* at 73.) She made it clear to Petitioner that he "very well may get jail." (*Id.*) Counsel also signed Petitioner's written plea form, indicating that she "personally read and explained to [Petitioner] the entire contents of th[e] plea form" and "discussed all charges and possible defenses with [Petitioner], and the consequences of th[e] plea, including any immigration consequences." (*Id.* at 96.)

Further, there is no evidence in the record that Petitioner's trial counsel unduly pressured or threatened Petitioner to plead guilty. The declaration of Petitioner's trial counsel states that Petitioner "was in no way rushed [to enter his plea,] as we discussed the case a month in advance of the settlement date and I gave him various avenues to follow up on if he wanted," including getting "a second opinion or consult[ing] an immigration attorney prior to the settlement conference." (*Id.* at 72.) Thus, Petitioner had a month to consider the terms of the plea agreement and even pursue a second legal opinion before deciding whether to enter his guilty plea.

For the reasons above, Petitioner fails to demonstrate that his counsel's advice to plead guilty amounted to coercion. Accordingly, the California Court of Appeal's denial of this claim was neither contrary to or an unreasonable application of clearly established federal law, nor based on an objectively unreasonable determination of the facts in the record, and therefore Petitioner is not entitled to federal habeas relief as to this aspect of his ineffective assistance of counsel claim. *See* 28 U.S.C. § 2254(d).

In sum, Petitioner fails to demonstrate that he is entitled to federal habeas relief with respect to any aspect of his ineffective assistance of counsel claim. Accordingly, the Court recommends that Petitioner's ineffective assistance of counsel claim be **DENIED**.

## ii. Voluntariness of Petitioner's Guilty Plea

The second of Petitioner's fully exhausted federal habeas claims is that his plea was not entered voluntarily and intelligently. (ECF No. 6 at 7, 22–23.) Petitioner asserts that he did not enter a knowing and voluntary guilty plea because he was not aware "of all the accurate consequences and all the available non-frivolous forms of defense that were properly suited in his case." (*Id.* at 22–23.) Specifically, Petitioner claims that he was not informed by his counsel that approximately two months before he pleaded guilty to a violation of California Health and Safety Code § 11360(a) for the transportation of more than 28.5 grams of marijuana, § 11360(a) was amended such that the term "transportation" now qualifies as "transportation for sale." (*Id.* at 22.) Petitioner claims that if he had been informed of this amendment by his counsel, he would not have accepted his guilty plea because having count two (possession of marijuana for sale in violation of California Health and Safety Code § 11359) dropped from his charges would be of no benefit to him.

Respondent argues that this claim should be denied because the California Court of Appeal's finding that this claim is both procedurally barred and without merit was not unreasonable. (ECF No. 19-1 at 13–14.)

Petitioner raised the claim that his plea was not entered knowingly and voluntarily in the habeas petitions that he filed with the San Diego County Superior Court (ECF No. 20-2 at 3–4), the California Court of Appeal (ECF No. 20-5 at 3), and the California Supreme Court (ECF No. 20-7 at 9). The California Supreme Court denied the petition before it without comment (ECF No. 20-8) and, thus, there is no reasoned decision from the state's highest court with respect to this claim. Therefore, this Court "looks through" to the last reasoned state court decision to address Petitioner's claim and presumes that it provides the basis for the higher court's denial of Petitioner's claim. *See Ylst*, 501 U.S. at 805–06. The California Court of Appeal addressed the voluntariness and intelligence of

Petitioner's plea in its analysis of whether Petitioner's trial counsel rendered ineffective assistance. (*See* ECF No. 20-6.) As discussed above, the Court of Appeal denied the petition on the ground that it is both procedurally barred and meritless. (*Id.*)

Although this claim may be procedurally barred, as held by the California Court of Appeal, the Court finds that judicial economy favors giving priority to the merits of this claim because the issue is easily resolvable against Petitioner. *See Lambrix*, 520 U.S. 525. As discussed above, a defendant who pleads guilty on the advice of counsel may attack the voluntary and intelligent character of his guilty plea only by showing that the advice he received from counsel was not "within the range of competence demanded of attorneys in criminal cases." *Tollett*, 411 U.S. at 267. In the context of a guilty plea, the standard for determining whether an attorney's advice fell within the range of competence demanded of attorneys in criminal cases is the same standard used to determine whether an attorney's performance "fell below an objective standard of reasonableness" under *Strickland v. Washington*. *Hill*, 474 U.S. at 58–59 ("[T]he first half of the *Strickland v. Washington* test is nothing more than a restatement of the standard of attorney competence already set forth in *Tollett v. Henderson*.")

As discussed above, Petitioner fails to demonstrate that his counsel's advice to plead guilty fell below an objective standard of reasonableness or that his counsel coerced him to enter his guilty plea. Counsel's formal declaration, as well as her signed declaration on the back of Petitioner's written plea form, demonstrate that she adequately advised Petitioner of the immigration consequences of his guilty plea and that Petitioner entered his plea with an understanding of these consequences. (ECF No. 6 at 73, 94–96.) Counsel advised Petitioner that "she would attempt to get alternatives to custody, including work furlough, RRC or ideally residential rehabilitation," but that under the conditions of his plea agreement, he could receive these alternatives to custody only *if* they were made available to him by the trial court. (*Id.* at 73.) She made it clear to Petitioner that he "very well may get jail." (*Id.*) Counsel also signed Petitioner's written plea form, indicating that she "personally read and explained to [Petitioner] the entire contents of th[e] plea form"

and "discussed all charges and possible defenses with [Petitioner], and the consequences of th[e] plea, including any immigration consequences." (*Id.* at 96.)

In addition, there is no evidence in the record that Petitioner's trial counsel unduly pressured or threatened Petitioner to plead guilty. The formal declaration of Petitioner's trial counsel's states that Petitioner "was in no way rushed [to enter his plea,] as we discussed the case a month in advance of the settlement date and I gave him various avenues to follow up on if he wanted," including getting "a second opinion or consult[ing] an immigration attorney prior to the settlement conference." (*Id.* at 72.)

Further, to the extent that Petitioner asserts that California Health and Safety Code § 11360(a) was amended prior to his pleading guilty and that had he been advised of such amendment he would not have pleaded guilty, Petitioner provides no support for this allegation and the Court, upon its own independent research, finds that no such amendment occurred. Therefore, the Court finds that it was reasonable for Petitioner's trial counsel not to advise Petitioner that the "transportation" element of his § 11360(a) charge qualified as "transportation for sale," given that no such amendment to § 11360(a) had in fact been made.[7]

Petitioner fails to demonstrate that his trial counsel's advice to plead guilty was not "within the range of competence demanded of attorneys in criminal cases." *See Tollett*, 411 U.S. at 267. Accordingly, the Court concludes that Petitioner is not entitled to federal habeas relief as to this claim because the California Court of Appeal's denial of this claim was neither contrary to, nor an unreasonably application of, Supreme Court precedent, and it was not based on an objectively unreasonable determination of the facts.

///

---

[7] Likely, Petitioner is conflating amendments to other California Health and Safety Code sections with a perceived amendment to § 11360(a). In October 2013, effective January 1, 2014, California Assembly Bill 721 amended California Health and Safety Code §§ 11352 and 11379 to add a provision to each stating, "For purposes of this section, 'transports' means to transport for sale." A.B. 721, 2013–2014 Reg. Sess. (Cal. 2013). The change did not impact § 11360(a).

### iii. Trial Court's Failure to Conduct an On-the-Record Colloquy

The third of Petitioner's fully exhausted federal habeas claims is that the trial court erred in failing to conduct an on-the-record colloquy in order to obtain a valid waiver of Petitioner's constitutional rights, including his right to a jury trial.  (ECF No. 6 at 24–25.)  Petitioner claims that "[a]n explicit, on-the-record waiver of a defendant's constitutional rights is required for misdemeanors as well as felonies" and the "court did not do so here."  (*Id.*)  Respondent argues that this claim should be denied because it is procedurally defaulted and fails to raise a claim for which federal habeas corpus relief is available.  (ECF No. 19-1 at 14–15.)

Petitioner raised this claim in the petitions for review that he filed with the California Court of Appeal (ECF No. 20-5 at 20) and the California Supreme Court (ECF No. 20-7 at 25–26).  The California Supreme Court denied the petition without comment (ECF No. 20-8), and there is no reasoned opinion as to this claim from the California Court of Appeal (*see* ECF No. 20-6).  In such a situation, the silent denial of the state supreme court is considered to be a decision "on the merits of the claim[]," *Hunter v. Aispuro*, 982 F.2d 344, 347–48 (9th Cir. 1992), and a federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law.  *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) (citing *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000) ("Federal habeas review is not *de novo* when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law.")).  When conducting an independent review of the record, federal habeas courts must still defer to the state court's ultimate decision.  *Id.*  In the context of a silent denial of a claim by the California Supreme Court, a petitioner "can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the California Supreme Court's decision." *Cullen v. Pinholster*, 563 U.S. 170, 187–88 (2011) (quoting *Harrington*, 562 U.S. at 98.)

///

As stated above, "the right to due process does not impose [on state courts] strict requirements on the mechanics of plea proceedings." *Escamilla-Rojas*, 640 F.3d at 1062. "Rather, the right simply requires the trial court record to 'disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily.'" *Id.* (quoting *Brady*, 397 U.S. at 747 n.4). If the record demonstrates that a guilty plea is knowing and voluntary, then "no particular ritual or showing on the record is required." *McWilliams*, 730 F.2d at 1224. While Petitioner may be aware that Federal Rule of Criminal Procedure 11 and some state laws require courts to conduct on-the-record colloquies with criminal defendants regarding the waiver of their constitutional rights resulting from guilty pleas, this is not a constitutionally mandated requirement. *See Loftis*, 704 F.3d at 647. "The ritual of the colloquy is but a means toward determining whether the plea was voluntary and knowing." *United States v. Stewart*, 977 F.2d 81, 84–85 (3d Cir. 1992), *cert. denied*, 507 U.S. 979 (1993); *accord Cabberiza v. Moore*, 217 F.3d 1329, 1333–34 (11th Cir. 2000) (noting that an on-the-record colloquy for waiver of jury trial is not constitutionally required); *United States v. Simmons*, 961 F.2d 183, 187 (11th Cir. 1992) (holding that a trial court need not "obtain express waivers of [a defendant's] right to confront adverse witnesses and his right against compulsory self-incrimination" if it takes "adequate precautions to ensure that [the defendant] was entering his guilty plea with 'sufficient awareness of the relevant circumstances and likely consequences'" (quoting *Miller v. Turner*, 658 F.2d 348, 351 (5th Cir. 1981))); *United States v. Henry*, 933 F.2d 553, 560 (7th Cir. 1991) (finding guilty plea was entered voluntarily and intelligently even though the plea colloquy did not include discussions of the privilege against self-incrimination).

As the United States Supreme Court has never held that the Constitution requires state courts to conduct on-the-record colloquies into the knowing and voluntary nature of criminal defendants' guilty pleas, this Court concludes that the California Supreme Court did not commit clear error in its application of U.S. Supreme Court law when it summarily denied Petitioner's on-the-record colloquy claim. *See Pirtle*, 313 F.3d at 1167. There was a reasonable basis for the California Supreme Court's decision to deny the claim, *see*

*Cullen*, 563 U.S. at 187, and the Court therefore recommends that Petitioner's claim be **DENIED.**

### 3. The Court Should Deny Petitioner's Requests for Alternative Relief

Petitioner, in his Supplemental Brief in Support of Habeas Corpus (ECF No. 16) and Amended Supplemental Brief & Prayer for Relief (ECF No. 29), requests that this Court:

- "Vacat[e] the conviction and order[] petitioner to a Deferred Pre-Plea Diversion (drug court program) pursuant to P.C. 1000.5 or reduc[e] the charge to 11375(b) simple possession of marijuana for personal use";

- "[R]emove the deportation penalty";

- "[O]rder the early termination of probation";

- "[E]xercise favorable discretion based on the useable amount possessed and lack of conduct to imply criminal activity and . . . reduc[e] the current felony transportation 11360(a) charge to a misdemeanor under 11375(b)"; and

- "[A]mend the 2014 11360(a) plea agreement to state: 'transport for personal use.'"

(ECF No. 16 at 2; ECF No. 29 at 4.)  Because Petitioner fails to establish that the California state courts' decisions denying his habeas claims: (1) are contrary to, or involve an unreasonable application of federal law; or (2) are based on an objectively unreasonable determination of the facts, *see* 28 U.S.C. § 2254(d), Petitioner is not entitled to federal habeas relief.  Even if Petitioner were to prevail on his federal habeas petition, this Court is without jurisdiction to grant the specific relief that Petitioner seeks.  As Respondent correctly points out, the "nature of relief secured by a successful collateral challenge to a guilty plea" is limited to "an opportunity to withdraw the plea and proceed to trial." *Padilla*, 559 U.S. at 372–73.  Accordingly, the Court recommends that Petitioner's alternative requests for relief be **DENIED**.

///

///

# V. CONCLUSION

For the reasons outlined above, **IT IS HEREBY RECOMMENDED** that the Court issue an Order: (1) approving and adopting this Report and Recommendation, and (2) directing that Judgment be entered **DENYING** the Petition.

**IT IS HEREBY ORDERED** that no later than **July 31, 2017**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **August 14, 2017**. The parties are advised that failure to file objections with the specified time may waive the right to raise those objections on appeal of the Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, F.2d 1153, 1156 (9th Cir. 1991).

Dated: July 7, 2017

Hon. Jill L. Burkhardt
United States Magistrate Judge

15-cv-2554 WQH (JLB)